# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JOYCE D. SANDERS,           )
                            )
       Plaintiff,      )
  v.                        )   Case No. CIV-12-451-FHS-SPS
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of the Social )
Security Administration,[1] )
                            )
       Defendant.      )

## REPORT AND RECOMMENDATION

The claimant Joyce D. Sanders requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on September 10, 1961, and was forty-nine years old at the administrative hearing. (Tr. 27, 131). She completed her GED, and has worked as a cashier/checker. (Tr. 20, 151). The claimant alleges she has been unable to work since January 1, 2006, due to having a heart attack and breast cancer in remission. (Tr. 150).

### Procedural History

On April 9, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined the claimant was not disabled in a written decision dated July 22, 2011. (Tr. 11-22). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit two hours in an eight-hour workday, and sit six hours in an

eight-hour workday, with the additional limitations of occasionally stooping, crouching, crawling, kneeling, balancing, climbing stairs, and climbing ladders, but no overhead reaching with her left arm. (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and nation economy that she could perform, *e. g.*, sales attendant. (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by failing to account for her obesity, (ii) by failing to properly assess the treating physician opinion of Dr. Richard Helton, and (iii) by failing to properly assess her credibility. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of ischemic heart disease and malignant neoplasm of the breast in remission, as well as non-severe impairments of diabetes, trigger thumb release, COPD, and anxiety. (Tr. 13-14). The medical evidence reveals that the claimant was diagnosed with breast cancer in August 2001, which resulted in a left modified radical mastectomy and a right ductal lavage. Yearly follow-up mammograms indicated no further evidence of the disease. (Tr. 256-276). Additionally, she went to the emergency room with chest pains on April 18, 2007, and underwent a stent placement with Dr. Ghani. (Tr. 236-237). Dr. John Randolph performed her follow-up care. One year after the stent placement, Dr. Randolph noted that the claimant had no angina or shortness of breath and was doing well overall. (Tr.

239). In August 2008, the claimant complained of hand pain, but a scan revealed no fracture or dislocation. (Tr. 250).

Dr. Helton, the claimant's treating physician, has treating notes that largely consist of treatment for occasional illnesses and an injury to her hand, as well as medication management that included stress medications. (Tr. 279-325). Dr. Helton completed a Medical Source Statement (MSS) on September 29, 2010, which he indicated applied from 2001 through the date of the MSS. In the MSS, he stated that the claimant could lift less than ten pounds frequently and occasionally, stand/walk less than six hours in an eight-hour workday, and sit less than two hours in an eight-hour workday. Additionally, he stated that the claimant could only stand/walk/sit for ten minutes at a time. He stated that the claimant was not required to lie down during the normal workday; that she was limited in pushing/pulling; that she could never climb, kneel, stoop, or crawl, and only occasionally balance, crouch, or reach, but that she could frequently handle, finger, and feel; and she could not be exposed to heights. Although difficult to read, it appears Dr. Helton described the claimant's impaired activities as including dizziness with heights, a catch in her left arm when raised above shoulder level, and increased pain with activity, and that these were due to residual effects of chemotherapy, breast cancer (including her left mastectomy), major depression, COPD (due to being a smoker for over twenty years), and diabetes mellitus. (Tr. 413-414). In contrast, state reviewing physicians found that the claimant could do light work with no restrictions in all of the relevant time periods. (Tr. 395-409).

On June 10, 2010, Dr. Kathleen Ward, a licensed clinical psychologist completed a consultative examination of the claimant, diagnosing her with panic disorder without agoraphobia and mild generalized anxiety disorder. Dr. Ward noted that despite reporting panic episodes and general nervousness, the claimant herself saw "her disability as mainly physical in nature, though anxiety issues are mildly contributory, generally well treated with current medication." (Tr. 354-356). State reviewing physicians found insufficient evidence of limitations according to the psychiatric review technique, for the period January 1, 2006 through June 30, 2007, and only mild restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace; no difficulties in maintaining social functioning; and no episodes of decompensation for April 9, 2010 through July 6, 2010. (Tr. 366-390).

At the administrative hearing, the claimant testified that she had breast cancer including a radical left side mastectomy in 2001 but that she was currently in remission, that she had a heart attack in 2007 followed by a stent placement, and that she was five feet six inches tall and weighed 220 pounds. (Tr. 31-32). She stated that residual effects from her cancer include problems when using her left arm to lift things, and that the radiation treatment had burned her very badly. (Tr. 35-36). She also stated that she had a "lot of bone problems," including a broken leg and broken thumb on her left side. (Tr. 36). She testified that she does not drive long distances because her toes go numb, and that she smokes approximately a pack a day. (Tr. 33-34). As to her COPD, she stated that her doctor was trying several medications and had placed her on breathing treatments but she had not continued them because they were too cost-prohibitive. (Tr. 38).

Additionally, she stated that she takes Xanax for anxiety and stress, as prescribed by Dr. Helton, but that she does not sleep well and wakes every two hours. (Tr. 39). She indicated that she does not have insurance and only sees Dr. Helton every couple of months, unless she needs a breathing treatment. (Tr. 41). She testified that she could sit or stand no more than ten or fifteen minutes, that she could walk about a block, that she can squat while holding something and can bend over, and that she does not lift anything over ten pounds. (Tr. 42-44). She stated that her medications caused a sensitivity to sunlight and that one could cause blood clots but her doctors had been unable to find a better alternative for her. (Tr. 44-45).

In his written opinion, the ALJ found that the claimant's heart disease and breast cancer had created more than minimal limitations, but that her nonsevere impairments were well-controlled and did not cause more than minimal limitations. He recounted her testimony as well as the medical evidence in the record. He noted that her report of weak bones had not been supported by a bone scan, and that she had not actually suffered a heart attack but did have coronary artery disease for which she had the stent placed. (Tr. 18-19). He found her only partially credible in that she had received treatment for breast cancer and coronary artery disease, but that her cancer was in remission and her medications were managed without adverse side effects. He further noted that none of the medical sources indicated that she needed to lay down three to four times a day, and work activity after the alleged onset date – though not SGA – was probative of more functional ability than she alleged. (Tr. 19). As to Dr. Helton's MSS, he found it to be unsupported by clinical or diagnostic testing and inconsistent with the evidence as a

whole because her cancer was in remission, she had a normal bone scan, had good results from her stent placement and had no angina or shortness of breath, and the echocardiogram revealed only moderate dilated right ventricle, mild tricuspid regurgitation, and mild left ventricular hypertrophy. (Tr. 19). The ALJ further noted that, despite the numerous limitations indicated in the MSS, Dr. Helton had not referred the claimant for further treatment but his treatment had been limited to prescribing medication, and thus found the MSS not entitled to substantial weight. (Tr. 20). The ALJ further gave the state reviewing physician opinions little weight because they did not have all of the evidence, and thus the ALJ incorporated the above-mentioned postural limitations as reflected by the evidence and particularly related to the claimant's left arm. (Tr. 20).

The claimant first contends that the ALJ erred by failing to properly consider her obesity. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Therefore, "[a]ssumptions about the severity or functional effects of obesity combined

with other impairments [will not be made],"and "[w]e will evaluate each case based on the information in the case record."  Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *6.  Here, the record reflects that the claimant's weight ranged from 200 to 243 pounds and she is five feet, six inches tall.  (Tr. 273, 280-294, 297-324, 343-345, 348-351, 361-363, 412).  The claimant argues that this *could* support a finding of obesity, but she did not raise this issue at the administrative level and appears to be asking the Court to engage in speculation.  The ALJ *did* adequately discuss the claimant's other physical and mental impairments and the reasons for his RFC determination, and he was not required to speculate about whether the claimant's obesity exacerbated the claimant's other impairments.  *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan no disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

    The claimant next contends that the ALJ failed to properly analyze Dr. Helton's opinion as a treating physician.  The Court finds that the ALJ did not, however, commit any error in his analysis.  He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Helton, who was the only physician to impose any physical limitations on the claimant that were inconsistent with her RFC.  As Dr. Helton was a treating physician, the ALJ was required to give his medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other

substantial evidence in the record." *Langley,* 373 F.3d at 1119, *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that his opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Helton's medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of the opinions of Dr. Helton is set forth above. The Court finds that the ALJ considered his opinion in accordance with the appropriate standards and properly concluded they were entitled to little weight. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Helton in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having

reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant also contends that the ALJ erred in determining her RFC by failing to properly analyze her credibility. A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In assessing the claimant's credibility in this case, the ALJ concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and found that he description of symptoms was only partially credible in that she was treated for breast cancer and coronary artery disease, but she had obtained good results from her treatment. (Tr. 18-19). In reaching this conclusion, the ALJ mentioned the applicable credibility factors and cited evidence supporting his finding that the claimant's subjective complaints were not credible. He specifically reiterated the claimant's own reports, and noted that her statements were inconsistent with allegations

of disabling pain, *e. g*., that her assertion of weak bones was not supported by multiple x-rays or a bone scan; that although the claimant was diagnosed with coronary artery disease and underwent stent placement, she did not actually have a heart attack as she reported; and that none of the claimant's doctors (including Dr. Helton's very restricting MSS) indicated that she needed to lay down three to four times a day. The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma